TRAXLER, Chief Judge,
concurring:
I concur in Parts I and III of Judge Niemeyer’s opinion and in the result reached in Part II. However, because my analysis of Claridy’s claim that the district court erred in refusing to suppress the fruit of the search warrant diverges from Judge Niemeyer’s, I write separately regarding that claim.
In analyzing Claridy’s motion to suppress this evidence, the district court noted that a “threshold issue is whether the search was federal or state in nature, because compliance with Rule 41 is only required for federal searches.” United States v. Claridy, 2007 WL 4554017, at *3 (D.Md. Dee.18, 2007). In this regard, the court stated that “the test to be applied in determining whether a warrant must be obtained in compliance with Rule 41(b) is whether the warrant application was made at the direction or urging of a federal officer.” Id. (internal quotation marks and alteration omitted). The court concluded that the test was satisfied and that Rule 41 was triggered. See id. In so doing, the district court noted that the investigation and searches were conducted by members of the task force, all of whom were federal officers or federally deputized. See id. The court also observed that after Claridy was arrested, Detective Gladstone had told him that he was the target of a federal drug investigation and Claridy “was designated as a federal detainee by the Division of Pretrial Detention and Services of the Maryland Department of Public Safety and Correctional Services.” Id.
Having found that Rule 41 applied to the search, the district court did not explicitly decide whether Gladstone had violated the rule. See id. at *4. The court did not do so because it concluded that even if a violation occurred, the violation would not warrant suppression of the fruit of the searches because it did not amount to a constitutional violation, the defendants were not prejudiced by any violation of the rule, and neither Gladstone nor any other task force member had acted with deliberate disregard for Rule 41(b). See id.
The government now argues that we should affirm the denial of Claridy’s suppression motion on the basis that the district court erred in concluding that Gladstone was required to comply with federal Rule 41 in obtaining the search warrant. The relevant facts are not in dispute, and the correctness of the district court’s legal conclusion that those facts required Gladstone to comply with federal Rule 41 in obtaining the warrant is an issue we review de novo. See United States v. Kimbrough, 477 F.3d 144, 147 (4th Cir.2007) (explaining that we review fact findings underlying a suppression order for clear error and review de novo the legal conclusions underlying such an order).
Gladstone, a Baltimore City police officer, obtained his warrant under Maryland Code of Criminal Procedure § 1-203, which provides in pertinent part:
A circuit court judge or District Court judge may issue forthwith a search warrant whenever it is made to appear to the judge, by application as described in paragraph (2) of this subsection, that there is probable cause to believe that:
(i) a misdemeanor or felony is being committed by a person or in a building, apartment, premises, place, or *287 thing within the territorial jurisdiction of the judge; or
(ii) property subject to seizure under the criminal laws of the State is on the person or in or on the building, apartment, premises, place, or thing.
Md.Code, Crim. Proc. § l-203(a)(l). Federal Rule of Criminal Procedure 41(b), with which Claridy claims Gladstone was required to comply in obtaining his warrant, provides, in pertinent part:
Authority to Issue a Warrant. At the request of a federal law enforcement officer or an attorney for the government:
(1) a magistrate judge with authority in the district — or if none is reasonably available, a judge of a state court of record in the district — has authority to issue a warrant to search for and seize a person or property located within the district.
Fed.R.Crim.P. 41(b)(1).
In my view, the inquiry into whether Gladstone was required to comply with Rule 41 in obtaining the warrant must begin with United States v. Williams, 977 F.2d 866 (4th Cir.1992). In Williams, a state police officer obtained a search warrant from a county magistrate based on probable cause that evidence of crack cocaine crimes would be found at the place to be searched. As part of his training, a federal officer accompanied state officers in executing the warrant. The defendants, upon their arrests, were “booked ... as federal prisoners,” and an assistant United States Attorney indicated that they would be federally prosecuted. Id. at 868. Seeking to suppress the fruit of the search, the defendants contended that the officer had been required to obtain the war rant in compliance with Rule 41 because the officers had intended from the beginning that the case would be prosecuted federally. The district court rejected the defendants’ argument, finding that the decision to proceed federally was made after the search warrant had been obtained and executed. The defendants reiterated their argument. on appeal, and we affirmed. In so doing, we explained that “the test to be applied in determining whether a warrant must be obtained in compliance with Rule 41(a) is whether the warrant application was made ‘at the direction or urging of a federal officer.’ ” Id. at 870 (quoting United States v. Smith, 914 F.2d 565 (4th Cir.1990)); see also United States v. Clyburn, 24 F.3d 613, 616 (4th Cir.1994) (applying the same test). Because that test had not been satisfied and because there had not been any showing that the officers had intended from the beginning that the case would be prosecuted federally, we held that the warrant had been properly obtained. See Williams, 977 F.2d at 870.
Thus, under the test set out in Williams, the critical time is when the warrant application is made. It is as of that time that we look to see if the warrant was sought “at the direction or urging of a federal officer.” Events that occur and statements that are made after the warrant is applied for, while not necessarily irrelevant to that inquiry, must be considered with the realization that the character of an investigation can change as the investigation progresses, as can the intent as to what juris diction should prosecute the case. Often this depends on what is discovered during the search and on other factors that may interest a particular law enforcement agency or prosecutor.
The evidence here is uncontradicted that Gladstone was a state law enforcement officer who was also a member of a state-federal task force. Because he had been assigned by his department to the task force, he had been deputized as a federal officer. However, this designation alone did not make all of his activities those of a *288 federal officer, nor did it make all of his investigations federal. In fact, the vast majority of his work continued to be the investigation of crimes for prosecution in the state courts of Maryland. He testified that during his time on the task force, he had participated in hundreds of arrests related to narcotics violations and that 90% of those crimes were prosecuted in state court.
In this particular case, Gladstone testified that the investigation of Claridy was “conducted by local law enforcement agencies.” J.A. 86. When Gladstone received his initial information from his confidential informants, he shared it only with his sergeant, a Baltimore City police officer. Gladstone then undertook, with the help of Baltimore City Police Detective William Bearde, to confirm some of the information and to apply for the warrants once he had obtained the information he needed. There is not one mention in the record of involvement by any member of any federal law enforcement agency before the search warrants were issued. For Gladstone, it was simply business as usual, and from this there can be but one conclusion — no federal officer directed or urged Gladstone to get these warrants.
Claridy argues that the evidence shows Gladstone intended the case to be prosecuted in federal court all along. No evidence supports that conclusion, however. Gladstone testified that, prior to seeking the warrant, he had not reached out to any federal authority in an attempt to have Claridy’s case prosecuted federally. And as I have noted, in 90% of the narcotics-related arrests that Gladstone participated in during his time with the task force, the suspects were prosecuted in state court. Gladstone’s comment to Claridy that he had been the subject of a federal investigation was made only after execution of one of the warrants uncovered $7,999 in Claridy’s car. The comment gave no indication that Gladstone viewed the case as anything other than a normal task-force investigation. Indeed, Gladstone testified that he only described it as “federal” to emphasize to Claridy the “seriousness of the situation.” J.A. 93. Nor did Claridy’s designation as a federal detainee after execution of the warrants indicate that any decision that the case would be federally prosecuted had been made beforehand. See Williams, 977 F.2d at 870 (affording no significance to the fact that the defendant was booked federally). And, although some of the officers assisting in the execution of the search warrants were DEA agents, I note that the use of other task force officers as support for an arrest or search is common, and their performing this role would not support an inference that a decision had been made to federally prosecute the case.
Under these circumstances, I would hold that the only conclusion that could be drawn from the record before us is that Gladstone was not required to comply with federal Rule 41 in obtaining the warrant relating to state-law crimes, but rather was free to use the same Maryland procedure that any other Baltimore city police officer could employ. In any event, for the reasons Judge Niemeyer explains, even assuming Gladstone violated Rule 41, such a violation would not warrant suppression of the fruit of the search. See ante, at 283-84 & n. 2. I therefore agree that the district court properly denied Claridy’s suppression motion.